UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Samantha Wright,<br>　　　　　Plaintiff,<br>　　vs.<br>City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo, in his individual and official capacity; and Oscar Macias, in his official and individual capacity,<br>　　　　　Defendants. | Court File No.: 21-cv-510<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

# INTRODUCTION

1. Samantha Wright, the plaintiff in this case, will have permanent eye damage because Defendant Oscar Macias shot her in the eye with a so-called "less lethal" projectile during a George Floyd demonstration in Minneapolis.

2. In the early morning hours of Saturday, May 30, 2020, Ms. Wright was a member of the protesting crowd near East Lake Street and Nicollet Avenue in Minneapolis. She was not rioting, looting, or starting fires.

3. Yet law enforcement officers gratuitously struck her several times with "less lethal" projectiles, one of which struck her left eye.

4. At issue in this case is Ms. Wright's irreparable injury and what orders were given to the law enforcement officers who targeted Ms. Wright and other protesters.

# PARTIES

5. Plaintiff Samantha Wright is a resident of Minneapolis, Minnesota.

6. Defendant City of Minneapolis is a municipality incorporated in the State of Minnesota.

7. Defendant Medaria Arradondo is a resident of Minnesota. Arradondo serves as the Chief of Police for the Minneapolis Police Department, and was at all times material herein responsible for training and supervising Minneapolis police officers.

8. Defendant Oscar Macias committed the acts set forth below as an employee of Defendant City of Minneapolis. Plaintiff is suing him in his official and individual capacity.

## JURISDICTION

9. This is an action for monetary and declaratory relief under 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1343(a)(3), 1331, and 1367. Venue lies properly in this District pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred in this District and, on information and belief, Defendants reside in this District.

## BACKGROUND

10. As tensions escalated in Minneapolis related to the murder of George Floyd by Minneapolis police officers, the Minneapolis Police Department did not hesitate to respond by attacking protesters through the deployment of tear gas and "less-lethal" projectiles. When doing so, they did not provide warnings.

11. On May 26, 2020 – approximately three days before Plaintiff suffered permanent eye damage due to a projectile – in widely-publicized incidents, Minneapolis police officers shot projectiles at demonstrators during protests in Minneapolis.[1]

---

[1] *See, e.g.*, Evan Frost (@efrostee), Twitter, May 26, 2020, https://twitter.com/efrostee/status/1265445016710918148?s=20 (stun grenades), https://twitter.com/efrostee/status/1265446286297305090?s=20 (tear gas).

12. The City of Minneapolis and supervisory officials at its police department, including Defendant Arradondo, were on notice of these pre-existing violations of protesters' constitutional rights before Plaintiff was gratuitously shot with projectiles, in time to have prevented it from happening through appropriate supervision and training.
13. On May 27, 2020 – approximately two days before Plaintiff suffered permanent eye damage due to a projectile – in widely-publicized incidents, Minneapolis police officers again shot projectiles at demonstrators during protests in Minneapolis.[2]
14. The City of Minneapolis and supervisory officials at its police department, including Defendant Arradondo, were on notice of these pre-existing violations of people's constitutional rights before Plaintiff was gratuitously shot with projectiles, in time to have prevented it from happening through appropriate supervision and training.
15. Law enforcement officers employed by the Minneapolis Police Department fired the projectiles that struck Ms. Wright, and Defendant Oscar Macias fired the projectile that struck Ms. Wright in the eye.
16. These projectiles were fired in a manner contrary to the manufacturers' warnings and in contravention of Minneapolis Police Department written policies on the use of force.

---

[2] *See, e.g.*, Evan Frost (@efrostee), Twitter, May 27, 2020, https://twitter.com/efrostee/status/1265795992521228293?s=20 (stun grenades and tear gas), https://twitter.com/efrostee/status/1265817035881275396?s=20 (chemical irritant, stun grenades, and deterrent rounds), https://twitter.com/efrostee/status/1265815103561240582?s=20 (tear gas).

## MS. WRIGHT'S INJURIES

17. Being shot in the eye with a projectile has permanently altered Ms. Wright's life.
18. Ms. Wright's left eye orbital socket was shattered and she had to get stitches on her eyebrow.
19. Ms. Wright had bleeding in her eyeball, increased pressure, and her pupil will now stay dilated permanently.
20. Ms. Wright needed surgery to have a metal plate inserted in her face.

## *MONELL* AND SUPERVISORY ALLEGATIONS

21. Defendants have established policies, practices, and/or customs of using excessive force in violation of the constitutional rights of people participating in protests, specifically the George Floyd protests, and such policies, practices, and/or customs caused or contributed to the violation of Plaintiff's rights discussed in this Complaint.
22. Defendants have also failed to train or supervise their officers, agents, and employees to an extent that amounts to "deliberate indifference" to the rights of people participating in protests, specifically the George Floyd protests, and this caused or contributed to the violation of Plaintiff's rights discussed in this Complaint.
23. In addition, the Minneapolis Police Department has a policy, practice, or custom referred to as a "code of silence," which has made it obvious to Minneapolis police officers that it is highly unlikely they will be disciplined in a meaningful way, much less terminated, for using excessive force on people participating in protests, especially during the George Floyd protests where it was difficult for protesters to determine which agency each law enforcement officer was employed by, all of which contributed to the unlawful acts of violence against Ms. Wright.

24. Not only are Minneapolis police officers routinely not disciplined when they use excessive force but fail to truthfully report this unauthorized use of excessive force (or fail to cooperate with investigations into fellow officers); the Minneapolis Police Officers Federation ("the Federation") actively encourages them not to truthfully report the unauthorized use of excessive force, and not to cooperate with investigations into fellow officers.
25. There has been no training or supervision by the City of Minneapolis and Defendant Arradondo that has been sufficient to curb this allegiance to the "code of silence" by Minneapolis police officers and the Federation.
26. Consequently, Federation members know that they can act in the above-described ways, especially in protest situations where it is difficult for protesters to determine who used force or which agency the law enforcement officer who used force was employed by, and be shielded from accountability.
27. The failures of the City of Minneapolis and Chief Arradondo to effectively train or supervise such officers for this conduct – the failure to truthfully report the unauthorized use of excessive force, and the failure to cooperate with investigations into fellow officers – emboldened Minneapolis police officers to act without regard for the rights of protesters during the George Floyd protests, and were a moving force behind the deprivation of Plaintiff's constitutional rights.
28. In addition, Minneapolis police officers have been instructed by the Federation not to aid in investigations into other officers, and officers have followed that instruction.

29. On information and belief, the Minneapolis Police Department has not reprimanded, disciplined, or suspended any officer involved in any of the unlawful conduct at protests described in this Complaint, nor has any additional training or supervision been implemented sufficient to prevent similar incidents in the future.

## FIRST CAUSE OF ACTION
*Retaliatory Use of Force in Violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments*
*Against Defendant Oscar Macias*

30. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
31. Plaintiff was attempting to exercise her First Amendment rights to free speech and the right to peacefully assemble on May 30, 2020.
32. Defendant Oscar Macias used excessive force against Plaintiff in retaliation for her attempt to exercise her First Amendment rights.
33. Defendant Oscar Macias lacked probable cause to use such force against Plaintiff.
34. Defendant Oscar Macias's retaliatory use of force violated Plaintiff's constitutional rights.
35. Defendant Oscar Macias acted under color of law.
36. Defendant Oscar Macias's unlawful retaliatory use of force was willful and recklessly indifferent to the constitutional rights of Plaintiff as evidenced by the fact that he shot Plaintiff in the eye with a projectile.
37. Plaintiff suffered a permanent physical injury as a direct and proximate result of Defendant Oscar Macias's' violation of her First Amendment rights.

# SECOND CAUSE OF ACTION
*Excessive Force in Violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments*
*Against Defendant Oscar Macias*

38. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
39. Defendant Oscar Macias's use of force, firing one or more "less-lethal" projectiles at Plaintiff, violated Plaintiff's Fourth Amendment rights.
40. Plaintiff was not posing a threat to the safety of Defendant Oscar Macias or others, had not committed any severe or violent crime, and was neither actively resisting arrest nor attempting to evade arrest by flight. In light of the relationship between the need, if any, for the use of force to the amount of force used, (1) the extent of the injuries to Plaintiff, (2) the inadequacy of the efforts, if any, by Defendant Oscar Macias to temper or limit the amount of force used against Plaintiff, (3) the absence of a security problem posed by Plaintiff, (4) the absence of conduct from Plaintiff that was capable of being reasonably perceived by Defendant Oscar Macias as a threat, and (5) the absence of efforts by Defendant Oscar Macias to arrest Plaintiff met with active resistance, Defendant Oscar Macias's use of excessive force against Plaintiff was objectively unreasonable.
41. Defendant Oscar Macias acted under color of law.
42. Defendant Oscar Macias's' actions constituted an unlawful seizure in violation of Plaintiff's Fourth Amendment rights.
43. Defendant Oscar Macias violated Plaintiff's Fourth Amendment rights by shooting one or more less-lethal projectiles at Plaintiff, without forewarning, while Plaintiff attended a George Floyd protest.

44. Defendant Oscar Macias willfully engaged in this unconstitutional conduct.
45. As a direct and proximate result of Defendant Oscar Macias's violation of Plaintiff's constitutional rights, Plaintiff has suffered a permanent physical injury.

### THIRD CAUSE OF ACTION
*State Law Claim – Assault*
*Against Defendant Oscar Macias*

46. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
47. Defendant Oscar Macias's use of excessive, unprovoked, and unreasonable force to prevent Plaintiff from attempting to exercise her constitutional rights was intended to cause imminent harmful and offensive contact.
48. Plaintiff had a reasonable apprehension and fear that law enforcement firing "less lethal" projectiles would and did occur.
49. Defendant Oscar Macias had the apparent ability to cause Plaintiff harm.
50. Defendant Oscar Macias's actions were unlawful and unjustified.
51. As a direct and proximate result of these actions, Plaintiff suffered a permanent physical injury.

### FOURTH CAUSE OF ACTION
*State Law Claim – Battery*
*Against Defendant Oscar Macias*

52. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
53. Defendant Oscar Macias intentionally caused harmful or offensive contact with Plaintiff by using excessive force to prevent Plaintiff from

attempting to exercise her constitutional rights. Defendant Oscar Macias fired one or more "less-lethal" projectiles, causing permanent damage to Plaintiff's left eye.

54. As a direct and proximate result of Defendant Oscar Macias's actions, Plaintiff suffered a permanent physical injury.

## FIFTH CAUSE OF ACTION
*Supervisory Liability*
*Against Defendant Arradondo*

55. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
56. Defendant Medaria Arradondo, at all times material hereto, had supervisory responsibilities over Defendant Oscar Macias, and had actual knowledge of improper reporting by Defendant Oscar Macias regarding the use of force against Ms. Wright and/or in other similar incidents, amounting to a policy or custom of constitutional misconduct.
57. Defendant Arradondo, under color of state law, acted unreasonably or with deliberate indifference to, authorized, or acquiesced in the violation of Plaintiff's constitutional rights by Defendant Oscar Macias.
58. As a direct and proximate result of the acts and omissions of Defendant Arradondo, Ms. Wright suffered harm, and was forced to endure great pain and mental suffering.

## SIXTH CAUSE OF ACTION
*Civil Rights Violations – Monell v. Dept. of Social Services*
*Against Defendants City of Minneapolis and Arradondo*

59. Plaintiff restates the allegations contained in the previous paragraphs as if fully set forth herein.
60. Before May 30, 2020, Defendants City of Minneapolis and Arradondo, with deliberate indifference to the rights of protesters including

Plaintiff, initiated, tolerated, permitted, failed to correct, promoted, and/or ratified a custom, pattern, or practice on the part of Minneapolis police officers, including Defendant Oscar Macias, of deliberate indifference toward the use of excessive force, which is manifested in the failure to adequately investigate excessive force, failure to adequately train investigators, and failure to discipline officers.

61. Through Defendants City of Minneapolis and Arradondo, and with their agencies' ratification and approval, by failing to train, supervise, and discipline all officers consistently on this point, there has been an approval of a deficient policy, custom, or practice of the improper use of force, including potentially deadly force, with regard to protesters, especially those at George Floyd protests.

62. These Defendants acted with deliberate indifference to the constitutional rights of protesters as evidenced by the recurring use of excessive force against them, both during and before the George Floyd protests.[3]

63. These Defendants have a custom and practice of targeting protesters, especially the people who attended George Floyd protests, by using excessive force (including "less-lethal" projectiles) without justification

---

[3] *See, e.g.*, Liz Sawyer and Libor Jany, *Complaints skyrocket over police response to George Floyd protests*, Star Tribune, July 2, 2020, https://www.startribune.com/complaints-skyrocketing-in-wake-of-mpls-police-response-to-floyd-protests/571608232/ ("Some of the criticism leveled at the [Minneapolis Police Department] echoed complaints made after the 18-day occupation of the Fourth Precinct police station that followed the 2015 killing of Jamar Clark. A federal after-action report found numerous instances in which officers used 'less-lethal and nonlethal weapons' on protesters during the occupation, in clear violation of department policies, and often failed to document their actions. Federal officials also recommended that the department 'strengthen, train on, adhere to and enforce the use of force policy . . . .'").

or warning, and while at close range. A pre-existing pattern of such violations put these Defendants on notice that a course of training or supervision was deficient in a particular respect.

64. These Defendants failed to supervise, train, and correct this wrongful conduct. Indeed, these Defendants failed to supervise, train, and correct the use of objectively unreasonable force against protesters even after reports of this violative conduct circulated widely. This policy, practice, or custom was the moving force behind the constitutional violations that harmed Plaintiff.

65. This policy, practice, or custom evidences these Defendants' deliberate indifference to violations of the constitutional rights of protesters, including Plaintiff.

66. These Defendants' failure to train, supervise, or discipline regarding protesters' First and Fourth Amendment rights, even after many constitutional violations came to light, also evidences the deliberate indifference of these Defendants described above.

67. Plaintiff's injuries were directly and proximately caused by the aforementioned acts and omissions and by these Defendants' policies, practices, and/or customs.

## REQUEST FOR RELIEF

Plaintiff requests relief as follows:

1. A declaration that Defendant Oscar Macias's use of excessive force against Plaintiff violated the First and Fourth Amendments;
2. Damages compensating Plaintiff for her injuries against all Defendants, jointly and severally, in an amount greater than $50,000;
3. Punitive damages against Defendant Oscar Macias;
4. Prejudgment interest;

5. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and
6. Such other further relief as this Court may deem just and proper.

Dated: September 13, 2021

<u>s/Tim Phillips</u>
Tim Phillips (#390907)
Law Office of Tim Phillips
331 Second Avenue South, Suite 400
TriTech Center
Minneapolis, Minnesota 55401
Phone: (612) 470-7179
Email: tim@timphillipslaw.com

**ATTORNEY FOR PLAINTIFF**